LEVI GAGE, JR. *vs.* ELISHA J. PITTS.

If the purchaser of land over which there is a right of way by prescription interrupts tne way, and his grantor thereupon changes its course, with the intention of making it pass over his own adjoining land, but in fact makes it by mistake to pass over the granted premises, the right of way over the new route will continue, if accepted by those having the right of way, and assented to by the purchaser of the land, but not otherwise; and if the purchaser is under the same mistake as to the boundaries of his land, and supposes that the new route does not pass over the same, his silence will not justify the inference that he intends to permit the new route to pass over his land.

TORT to recover damages for breaking and entering the plain-tiff's close, and breaking down a gate thereon. Answer, that the defendant had a right of way over the same, which was interrupted by the plaintiff, and that the acts of the defendant were in the lawful use of the way and removal of the obstructions.

At the trial in the superior court, before *Rockwell*, J., it appeared that there was a drive way from a public road northerly over three lots of the plaintiff, to the land above, upon which two gates were put by the plaintiff, one at the commencement of the drive way, at the public road, and the other upon the plaintiff's land above. The defendant introduced evidence tending to show a use, by the public and by himself, since 1822, of a way from the public road to land north of the plaintiff's premises; that in 1835 Mosely Clapp, who then owned the premises now owned by the plaintiff and also the adjoining land, conveyed the premises now owned by the plaintiff to B. F. Cheney, who shortly afterwards, in the same year, erected buildings which interrupted the way; that the land thus sold was unfenced; that in the autumn of 1835, complaint being

made of the interruption of the way, Clapp, supposing that there was a right of way to pass from the land above to the highway, gave directions to have the course of the way changed, so as to pass round the corner of Cheney's land, and over his own land; that in acting upon these directions the course of the way was changed, but so as still to pass over a portion of Cheney's land; that Cheney made no objection when this change was made; that, after erecting his buildings, Cheney fenced his land, and occupied a portion of that over which the way is claimed, as a garden; and that the plaintiff purchased the same in 1849. There was evidence of more or less use of the way since 1835 by the defendant and others, and also of the character of such use; the plaintiff contending that it was not of such a character as to give a right. And there was evidence tending to show that it was made through wild land, for the use of persons going to mills at its northern end, and that it was over hills which were too steep for the use of carriages.

The plaintiff asked the court to instruct the jury, amongst other things, that no designation by Clapp of a new or substituted way upon land which he had before sold to Cheney could have any effect to create such substituted way; that there was no evidence to warrant the jury in finding that the part of the way at and immediately north of the upper gate had ever been substituted for the old way by any agreement mutually executed between parties competent to make such agreement and substitution; and that on the whole evidence the right of way claimed by the defendant had not been established. The judge declined so to rule, and instructed the jury, amongst other things, substantially as follows:

The defendant claims a right of way over the plaintiff's land on three grounds: 1. That there was a public road over the same; 2. That the public had acquired a right to pass there, by prescription and user; 3. That the defendant had acquired such right, by prescription and user. The first ground cannot be maintained, upon the evidence. The defendant may rest a legal defence upon his second ground, upon proper evidence, and this is a question of fact for the jury in the light of the following

legal principles: If a road has been used by the public in a proper manner, for a sufficient time, the public may have acquired a right of way by prescription. To establish such a way, the defendant must prove actual public use, general, uninterrupted, under claim of right so to use it, and continued for a period of more than twenty years. Although the testimony may not be sufficient to show that the public had acquired a right to a full public highway, used by footmen, horsemen and carriages in all the modes in which highways may be used, and without any bars or gates, yet it may be sufficient to show a public right to pass over a road, worked for such purpose, on foot or on horseback, and driving cattle, and subject to the duty of taking down and putting up bars, or opening and shutting gates. This was the right which the defendant claimed; and if he shows an actual public use of a defined and beaten road, general, uninterrupted, under a claim of right on the part of the public so using it, and continued for more than twenty years, he, as one of the citizens, had a right thus to enforce his claim and exercise his right.

The defendant may justify, upon sufficient evidence, upon his third ground, in the light of the following principles of law: To establish a private right of way over the lands of another by prescription and user, the claimant must show, not merely that the way was enjoyed by him twenty years, but also that the enjoyment was continuous, uninterrupted, adverse, under a claim of right and with the knowledge and acquiescence of the owner of the land over which the alleged way passes, in the absence of any evidence of permission or license; and such facts, if proved, are sufficient to establish his right. If the jury are satisfied that the use, during the whole time, was under a claim of right, and that the owner of the land knew of such use and claim, it is sufficient, although the evidence may not show a claim in words on the part of the person using the way, or a declaration in words on the part of the owner of the land, of his knowledge and acquiescence in the use. To establish a right of way by prescription, the way must be shown to have been used substantially in the same place, and following its course

substantially upon the same track. But if the owner of the land, recognizing the right, wishes to change the route in a particular point, he may do so upon his own land, to accommodate himself; and if the new piece of way is accepted by those having the right of way, and afterwards the way thus modified is used as the way was before, in the exercise of the same right, the right of way continues as before, and the right remains perfect as against the owner of the land and his grantees, in the modified route. In this case, evidence has been introduced tending to show that Mosely Clapp, who originally owned all the premises over which the alleged way passed and now passes, did make a slight alteration, and that the cause of the altera-- tion was this: Clapp sold a piece of land to one Cheney, which. cornered upon this way; finding the corner of the Cheney land extended upon the way, he changed the way a few feet, with the intent of carrying the whole way on to his own unsold land, and so leaving the Cheney land untouched by it. But the plaintiff contends upon the evidence, that, even if that was Clapp's purpose, he did not effect it, but that after the alteration some part of the way remained upon the corner of the Cheney lot, and that the upper gate, which was removed by the defendant, was upon that part, and that such alteration de-- stroyed the right of way. The court rules that if Clapp made this alteration in good faith, supposing that the new location was on his own land, and the use of the way continued there-- after as before, these facts did not destroy the right of way, but the land of the plaintiff is now subject to the right of way in its present condition.

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*G. T. Davis,* (*S. O. Lamb* with him,) for the plaintiff, cited *Cook* v. *Babcock,* 11 Cush. 206; *Putnam* v. *Bowker,* Ib. 545, and cases there cited; *Larned* v. *Larned,* 11 Met. 423; Washburn on Easements, 129; 1 Greenl. Ev. §§ 197, 199.

*W. Griswold,* for the defendant. The rulings were correct, as to the evidence requisite to prove a right of way. Washburn on Easements, 72. *Blake* v. *Everett,* 1 Allen, 248. *Thomas* v.

*Marshfield,* 13 Pick. 240. *Spear* v. *Bicknell,* 5 Mass. 130. The ruling as to the effect of the change of the course of the way in 1835 was sufficiently favorable to the plaintiff. Washburn on Easements, 107. *Darlington* v. *Painter,* 7 Penn. State R. 473. There was sufficient evidence of Cheney's assent to the change. There was also sufficient evidence to authorize the jury to find the acquisition of a right of way since 1835.

BIGELOW, C. J. The instructions were correct on all points, except those given in relation to the alleged change of the course of a previously existing way by the substitution of a new route over a corner of the land which belonged to Cheney in 1835, and which is now owned by the plaintiff. There was a defect in the instructions on this point. The attention of the jury was not drawn to the important consideration, that such substitution could not be effectual without the assent, express or implied, of Cheney. Although it appears that Cheney made no objection to the location and substitution of the new route, yet it does not appear that he knew it passed over his land. Indeed, there is direct evidence that Clapp, his grantor, in locating it, intended that it should pass outside of the lot which he had conveyed to Cheney. In this belief, the latter might well keep silent. No inference can be drawn from his silence, that he intended to permit a new route to pass over any part of his land.

In this aspect of the evidence bearing on this part of the case, the jury should have been instructed that if they found that there was a previously existing way by prescription, as claimed by the defendant, and the course or route of such way was changed in the year 1835 so as to pass over a corner of Cheney's lot, such right of way would still continue over such new and substituted route, and be a valid, existing way, as against the plaintiff, if the change was known and assented to by Cheney, under whom, by mesne conveyances, the plaintiff holds his title ; but that without such assent the way could not be claimed to exist over the plaintiff's land, unless it had been acquired by adverse use since 1835. Such an instruction was especially necessary, inasmuch as the plaintiff's counsel had requested the court to rule that " no designation by Clapp of a new or

substituted way upon land which he had before sold to Cheney could have any effect to create such substituted way." Clearly it could not, unless with the assent, express or implied, of Cheney.                                         *Exceptions sustained.*